J. T. FORD, JR., V. THE STATE.

No. 16207. Delivered January 10, 1934.
Reported in 67 S. W. (2d) 335.

The opinion states the case.

*Jesse Owens*, of Vernon, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of seduction, and his punishment assessed at confinement in the state penitentiary for a term of three years.

This case has been before this court on two previous convictions and was reversed. See Ford v. State, 45 S. W. (2d) 213, 55 S. W. (2d) 94.

The state in its endeavor to establish a case of seduction against the defendant introduced four witnesses. Wilma Maroney, the injured female, was over 18 years of age at the time of the alleged offense. Appellant was 17. She testified that she began going with the appellant about the first part of the month of May, 1930, and after having gone with the appellant about two weeks they had an act of intercourse. She further testified: "We always had been sweethearts at school and been together and one day at school he asked me if I loved him and I told him I did, and I asked him if he loved me and he said he did, and he asked me to marry him and I said 'when,' and he said, 'Just any time,' and then after that we were at the schoolhouse and he asked me to do this with him and I told him I didn't want to and he said, 'Why, hell, what difference does it make if we aim to get married.' I then had intercourse with the defendant. I submitted to that act because of his promise to marry me. I continued to go with him a good while after that. I first told him that I was in trouble when I first found it out myself and I told him I needed some help and asked him if

he still aimed to marry me and he said he did. I just kept asking him and told him it looked like he would do something after he promised me he would, but he just kept putting me off and telling me he would and told me he would as soon as he got his voucher check. He never did marry me. I gave birth to a baby on the 24th of February, 1931. J. T. Ford, Jr., is the father of my child. J. T. Ford had never set the date of any marriage. Once he said when he got his voucher check. He would tell people when I was present, 'Wilma and me are going to get married when we get older.' J. T. Ford had other acts of intercourse with me later. I had intercourse with him later because I just felt like he loved me enough to marry me and I thought, 'I am in trouble now and I will have to go on through.' "

By the witness Leonard Mills the state proved substantially the following facts: "I have known J. T. Ford about four or five years. We were friends and ran around together. I seen J. T. Ford have an act of intercourse with Wilma Maroney. It was during the summer of 1930 north of Fargo. We were in my car just we three. J. T. Ford asked me to stop and I did and walked back down the road and stayed down there a little bit and turned around and walked back and I saw him have the intercourse with Wilma Maroney. J. T. Ford never did exactly tell me that he had promised to marry her. He told me that he was supposed to marry Wilma and she wanted him to. He said she wanted him to. He said he was going to quit going with Wilma if she didn't buy him a belt and a hat. I was going with Ruby Maroney at the time and he asked me if I was having intercourse with Ruby and I told him 'no.' He asked me why I didn't and I told him I didn't want to. He said, 'Why don't you just promise them any damned thing and they will do anything.' The act of intercourse I saw between J. T. and Wilma happened in June, 1930, and the conversation that I related all took place after May 25, 1930."

Roy Stafford testified on behalf of the state in substance as follows: "I recall having a conversation with J. T. Ford in January, 1931, about a month or six weeks before Wilma's baby was born. I was just going on with J. T. about this. I told J. T. that Mr. Maroney was looking for him with a shotgun. I just kept on talking to him trying to scare him but I didn't know anything about it and he told me it could be his but he didn't know whose it was. He said other boys said it could be theirs and he said that it might be his, he didn't know. The last conversation when I was trying to get J. T. to marry Wilma I was trying to get him to marry her because I figured

he might get hurt if he didn't. I just wanted to save him some trouble."

Leonard Mills being recalled testified further: "At the time I witnessed an act of intercourse between J. T. and Wilma. I heard some more conversation there. I sat down in the car by the side of Wilma and J. T. says, 'Scoot over.' He was sitting on the left side, under the steering wheel, and I was sitting between them. He said, 'Leonard, get out and let me get over there.' He said, 'We have got to marry,' and I got out and let him over there."

Henry Maroney, the father of Wilma, testified that Wilma was 21 years of age and that she had never been married; that she did go with J. T. Ford in 1930 but he didn't remember whether she went with any other boys during that time; that if she went with any other boys he didn't remember.

The prior convictions were reversed because the complaining witness, Wilma Maroney, was not corroborated as to the act of intercourse and the promise of marriage. We believe that the state has sufficiently corroborated the prosecutrix as to the act of the intercourse but as to the promise of marriage we feel that the testimony does not measure up to the requirements of the law. It is true that Leonard Mills, who had testified on two previous trials, again testified on the present trial substantially as he did before with the further statement that he heard the defendant say, "We have got to marry." Said statement is rather comprehensive in its nature and whether the statement, if made by the defendant as testified to, referred to a previous promise of marriage or was induced by fear to avoid serious trouble as a result of prosecutrix's condition is not disclosed by the record. By the words, "we have got to marry" the idea is conveyed that they are compelled or forced to do so. Again, th prosecutrix testified that he, the appellant, told various people while she, the prosecutrix, was present, "Wilma and me are going to get married when we get older." It appears rather strange that if it is true that the appellant made such statements to various people in the presence of the prosecutrix, that some of said persons would have been secured as witnesses to substantiate and corroborate her on the question of marriage in view of the fact that this case has been reversed twice heretofore. Just why the testimony of such parties was not obtained is not disclosed by the record. We deem the evidence as to the promise to marry of such doubtful character as not to justify reliance thereon in engaging in an act of intercourse. It is the opinion of this court that the additional testimony offered by the state is not of sufficient probative force

tending to corroborate the testimony of Wilma Maroney that she yielded her person to the appellant upon his promise to marry her prior to the time of the alleged act of intercourse.

Wherefore, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

. . The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.